1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  AMIR KHAN,                              No. CIV S-07-0290-CMK

12              Plaintiff,

13       vs.                                <u>MEMORANDUM OPINION AND ORDER</u>

14  COMMISSIONER OF SOCIAL
    SECURITY,
15
                Defendant.
16
    _____/
17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20  Pursuant to the consent of the parties, this case is before the undersigned for final decision on

21  plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-motion for summary

22  judgment (Doc. 21).

23  / / /

24  / / /

25  / / /

26  / / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on February 17, 2004.  In his application, plaintiff claims that disability began on April 12, 2003.[1]  Plaintiff claims his disability consists of a combination of back, shoulder, and neck pain which causes "constant pain, weakness, fatigue, difficulty sleeping, and related problems."  Plaintiff's claim was initially denied.  Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on February 8, 2005, before Administrative Law Judge ("ALJ") Laura Speck Havens.   In her July 29, 2005, decision, the ALJ made the following findings:

1.  The claimant protectively filed applications for a period of disability and disability insurance benefits and for supplemental security income payments on February 17, 2004;

2.  The claimant is 50 years old, has a limited education, and has past relevant work experience as a packaging machine operator and warehouse worker;

3.  The claimant met the special earnings requirements for benefits based on disability under Title II of the Social Security Act at the time of his alleged disability onset and continues to meet those requirements through at least December 31, 2010;

4.  The claimant has not engaged in substantial gainful activity since September 24, 2003, his alleged disability onset date;

5.  The claimant has the following medically determinable impairment:  back, neck, and shoulder pain;

6.  The claimant's medically determinable impairment significantly limits his ability to perform basic work activities;

7.  The claimant does not have any impairment or impairments that meet or equal the criteria set forth in any applicable section of the Listing of Impairments. . .;

8.  The claimant has the residual functional capacity to perform medium work with a preclusion against extremely forceful pushing or pulling activities with the left upper extremity;

/ / /

---

[1]     At the administrative hearing, plaintiff amended the alleged onset date to September 24, 2003.

9.     The claimant is capable of performing his past relevant work;

10.    The claimant's subjective statements regarding pain and other symptoms have been considered, but to the extent that those statements constitute an allegation that the claimant has been precluded from engaging in all substantial gainful activity by a medically determinable impairment or impairments for a period of time which has lasted or reasonably can be expected to last for 12 continuous months, they are not found credible; and

11.    The claimant was not disabled . . . at any time on or before the date of this decision.

After the Appeals Council declined review on September 23, 2006, and subsequently declined to re-open the case, this appeal followed.

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following medical records:

1.     Records covering the period from February 3, 2003, through September 24, 2003, from Lodi Memorial Hospital (Ex. 1F, CAR 128-37);

2.     Report dated September 29, 2003, by Ben G. Watson, M.D. (Ex. 14F, CAR 222);

3.     Report of an October 16, 2003, MRI of plaintiff's lumbar spine (Ex. 2F, CAR 149);

4.     Records covering the period from October 16, 2003, through January 13, 2004, from Alpine Orthopedic Medical Group which include a November 12, 2003, report by Gary M. Alegre, M.D. (Ex. 2F, CAR 143-47);

5.     Report of a December 12, 2003, MRI of plaintiff's left shoulder (Ex. 2F, CAR 140);

6.     Report of a January 13, 2004, MRI of plaintiff's cervical spine (Ex. 2F, CAR 139);

7.     Report dated January 23, 2004, by Stephen I. Mann, M.D. (Ex. 3F, CAR 151-56);

8.     "Work Status and Treatment Plan" dated February 5, 2004 (Ex. 2F, CAR 148);

9.     "Primary Treating Physician's Permanent and Stationary Report (PR-3)" dated February 5, 2004 (Ex. AC-2, CAR 145-50);

10.   Physical residual functional capacity assessment dated April 1, 2004, by agency consultative physician (Ex. 5F, CAR 159-67);

11.   Vocational worksheet dated April 9, 2004 (Ex. 6F, CAR 168-71);

12.   Vocational worksheet dated May 12, 2004 (Ex. 8F, CAR 174-79);

13.   Report dated July 13, 2004, by Mohinder Nijjar, M.D. (Ex. 10F, CAR 187-96);

14.   Report dated November 5, 2004, by David M. Broderick, M.D. (Ex. 11F, CAR 197-205);

15.   Progress notes from February 2005 through May 2005 from Elvis Tanson, D.O. (Ex. 15F, CAR 223-24); and

16.   Report dated April 21, 2005, by agency examining physician Steve McIntire, M.D. (Ex. 13F, CAR 214-18).

2003

The CAR contains records from Lodi Memorial Hospital from February through September 2003.  A document dated September 24, 2003, indicates that plaintiff was seen for lumbosacral pain and mild left forearm contusion incident to being hit by a forklift earlier that day.  An x-ray taken that same day revealed no acute bony injury but "mild narrowing of L5-S1. . . ."

On September 29, 2003, Dr. Watson prepared a document entitled "Additional Information for PR-2 Report by Primary Treating Physician."  Dr. Watson noted that, subjectively, plaintiff complained of worsening pain in his upper and lower back, neck, head, right elbow, and right shoulder.  Plaintiff also complained of abdominal pain and pain in his left wrist and hand.  As to his head, plaintiff reported no feeling in the top of his head.  The doctor noted that plaintiff "has attended work today, doing almost nothing – he took a Vicodin and spent most of the day laying down."  Objectively, Dr. Watson noted:

Extremely dramatic in all actions, he asks his daughter to do everything – remove and replace his shoes, secure the velcro on his back support belt, to take a paper I tried to hand to him.  Light touch elicits withdrawal and grimace over the entire head, neck, back, and lower abdomen, unless distracted, when no reaction is made.  Neck range of motion is strongly

4

resisted.  No excessive muscle tension is palpable at any level of the back or neck.  Straight leg raise is to 80 degrees bilaterally without apparent discomfort.  Standing range of motion is essentially nil, although he does climb down his thighs with his hands and holds that position for quite a long while.  Deep tendon reflexes are brisk and symmetrical in the upper and lower extremities bilaterally.

Dr. Watson's treatment plan was for plaintiff to attend physical therapy over two weeks.  The doctor cleared plaintiff for modified work duty "with lifting no more than 5 pounds, none from floor or overhead."  He also recommended that plaintiff lay down at times if needed.

On October 16, 2003, an MRI of plaintiff's lumbar spine was obtained which revealed "mild dessication . . . involving the L3-4, L4-5, and L5-S1 discs."  The MRI also showed "L5-S1:  Bilateral spondylosis."

On November 12, 2003, Dr. Alegre of Alpine Orthopedic Medical Group prepared a report regarding the injuries plaintiff sustained in the September 24th forklift accident.  Dr. Alegre reported the following history:

. . . On September 24, 2003, [plaintiff] was hit by a forklift apparently throwing him several feet.  He sustained an injury to his neck, left shoulder, and low back.  He has several complaints.  The first complaint is neck pain and stiffness with headaches.  He also complains of left shoulder pain with lifting objects and overhead activities.  He has low back pain and pain into the right posterior thigh and anterior leg.  He had 75% back, 25% leg symptoms.  He has been doing physical therapy which gave him no relief.  He has no radicular pain into the arm.  He has focal neck pain, headaches, left arm pain into the shoulder.  He has not had any epidural injections.  He is on Vioxx as an anti-inflammatory.  He apparently is not working and is on temporary disability.

Plaintiff reported to Dr. Alegre that he smokes one pack of cigarettes a day.  On physical examination, Dr. Alegre reported:

. . . He does have some symptom magnification on exam.  He has severe neck stiffness and trouble bending forward and back in his lower lumbar spine.  There is no appreciable lumbar spasm and no midline pain in the neck.  He does have pain over the lower lumbar spine.  He has a positive Hawkins and Neer impingement sign of the left shoulder and has forward elevation to 140 degrees compared to 160 degrees on the right.  External rotation of the bilateral shoulders is at 60 degrees, adduction internal rotation is to T10.  He has full strength in his bilateral lower extremities including normal symmetric sensation, normal deep tendon reflexes.

1
2
3

> Examination of his lower lumbar spine produces pain in his low back with passive supine straight leg raise at 80 degrees. He has no pain into the legs with passive supine straight leg raise. He demonstrates full strength in his bilateral lower extremities including normal symmetric sensation and normal deep tendon reflexes.

4  Dr. Alegre gave plaintiff therapeutic injections of Xylocaine and DepoMedrol into his shoulder.

5  Plaintiff reported pain relief after the injections and the doctor noted that plaintiff "was able to

6  fully elevate his shoulder to 160 degrees equal to the contralateral side." Dr. Alegre did not

7  provide any assessment of plaintiff's functional capabilities.

8  On December 12, 2003, an MRI of plaintiff's left shoulder was obtained. This

9  study revealed mild arthritic changes in the acromioclavicular joint, a normal glenohumeral joint,

10  an intact rotator cuff, and no bone edema or joint effusion. The conclusion reported was

11  "[n]egative left shoulder MRI scan."

12  2004

13  On January 13, 2004, an MRI of plaintiff's cervical spine was obtained which

14  revealed that the "C2-3 level is unremarkable" but "mild posterior disc bulging at the C3-4 level

15  with mild left neural foraminal stenosis, without spinal canal stenosis."

16  On January 23, 2004, Dr. Mann prepared a report regarding plaintiff's work

17  injury. He stated the purpose of his examination of plaintiff was to provide a second opinion.

18  Plaintiff reported to Dr. Mann complaints of low back pain, thoracic pain, and left shoulder pain.

19  Contrary to information provided to Dr. Alegre in November 2003, plaintiff reported to Dr.

20  Mann that he did not use tobacco. On physical examination, Dr. Mann noted no acute physical

21  distress. He also stated in his report:

22
23
24
25

> BACK: Patrick's maneuver is negative bilaterally. Supine straight leg raising causes complaints of pain at 30 degrees on the left and 40 degrees on the right side. On the right side, he does have a radicular pain pattern which is absent on the left. The pelvis is horizontal. Trendelenburg is negative. I was able to obtain 90 degrees of hip flexion to T11. There are no spasms noted.

26  ///

Range of motion of the lumbar spine was at expected levels except as to flexion, which was 30 degrees (90 degrees expected) and extension which was zero (30 degrees expected). Dr. Mann reported that plaintiff was able to "toe, heel, and tandem walk without problems." Range of motion in the shoulders was observed at the expected limits. Dr. Mann opined that plaintiff has left shoulder rotator cuff tendinitis and "symptom magnification with presence of Waddell's signs." In his discussion, Dr. Mann noted:

> . . . [T]here are several factors on examination which indicate symptom magnification. There was a marked discrepancy in straight leg raising between seated and supine. This means that you cannot rely on his reported pain with supine straight leg raising.
>
> The other Waddell's signs include the reported 20 percent decrease in pinprick for the entire left arm and a 30 percent decrease in pinprick for the entire right leg. When patients report there is abnormal sensation in the entire extremity, this is considered a positive Waddell's sign.

As to functional capabilities, Dr. Mann opined:

> I do not think he will be able to return to his usual and customary job duties. Limitations that I would place on him at this point are no repetitive use of the left arm above shoulder height. No lifting more than 30-40 lbs. on a frequent basis. He should also be able to change positions as necessary. There should be a provision against repetitive bending.

A document entitled "Work Status and Treatment Plan" dated February 5, 2004, indicates that plaintiff is permanent and stationary, should not engage in repetitive lifting over 50 pounds, and should not engage in prolonged sitting.[2] The record also contains a document dated February 5, 2004, entitled "Primary Treating Physician's Permanent and Stationary Report (PR-3)."[3] It appears that neither of these documents was prepared incident to a separate physical evaluation but was prepared based on the existing records. The second of these documents

---

[2] The name of the doctor who signed this document is not legible. However, the date on this document is the same as a document entitled "Primary Treating Physician's Permanent and Stationary Report (PR-3)." Therefore, it appears that both documents represent the opinion of plaintiff's treating physician, whom plaintiff states was Dr. Watson.

[3] The document does not reveal who prepared the report. The report does, however, state on the last page that Drs. Mann, Alegre, and Watson "contributed information used in this report." According to plaintiff, this report was prepared by Dr. Watson.

reported the following functional capacity:

> The patient should be precluded from very heavy work. Specifically, repetitive lifting greater than 50 pounds from floor level, and pushing and pulling of comparable force, should be restricted to occasional.
>
> Restricted activities: Previously Mr. Khan was able to carry 65 lbs., fifty feet. He now is restricted to 50 lbs. and no more than 35 feet. The patient could in the past lift up to 75 lbs. occasionally. He is now restricted to occasional lifting from waist level or below 50 pounds maximum. Bending was previously performed occasionally through an eight hour work day, but now could be occasional during no more than 3 hours per day.

This report also noted that previous doctors observed symptom magnification and positive Waddell's signs and agreed that "[t]he patient's subjective complaints have consistently been out of proportion to the objective diagnostic findings."

On April 1, 2004, an agency consultative physician completed a physical residual functional capacity assessment. Based on a review of the existing record, the doctor concluded that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and stand and/or walk for six hours in an eight-hour day. The doctor concluded that plaintiff was unlimited in his ability to push/pull and opined that plaintiff could frequently climb, balance, kneel, crouch, and crawl, but only occasionally stoop. Plaintiff was also limited in his ability to perform overhead reaching, but unlimited with respect to other manipulative functions. The agency doctor did not note any visual, communicative, or environmental limitations.

An April 9, 2004, vocational worksheet indicates that plaintiff performed past relevant work as a "machine operator, packing," that plaintiff does not have the capacity for this work, but that he has the capacity to perform unskilled light work. A May 12, 2004, vocational worksheet indicates that plaintiff's residual functional capacity is consistent with light work with postural limitations to overhead reaching. The document also indicates past relevant work as a "mach. oper. @ cannery."

/ / /

/ / /

Dr. Nijjar prepared a report regarding plaintiff's injuries on July 13, 2004.  Dr. Nijjar conducted a comprehensive review of the existing medical record and performed a physical examination.[4]  On physical examination, Dr. Nijjar noted the following:

1. Cervical Spine – Slight straightening of the cervical curvature and tenderness over the midline; limited extension and flexion;

2. Dorsal Spine – no tenderness or deformity; no paraspinal muscle spasm; range of motion within normal limits;

3. Lumbosacral Spine – Straightening of the lumbar curvature and tenderness in the lumbar spine extending from L3-S1; slight tenderness in the left sacrospinous ligament; no tenderness in the sciatic notch or over the sacroiliac joints;

4. Shoulders – No muscle spasm; no tenderness; no atrophy; range of motion within normal limits;

5. Lower Extremities – Patient walks without a limp and is able to stand on his toes and walk on his heels; difficulty squatting; no atrophy; reflexes and sensation to touch on pinprick within normal limits; power in muscle groups is normal at grade 5;

6. Upper Extremities – Reflexes normal; sensation to pinprick touch within normal limits; power in muscle groups is normal at grade 5.

Dr. Nijjar opined that plaintiff is permanent and stationary and indicated that the objective factors of disability are restricted range of motion, tenderness, mild spinal stenosis, positive MRI for lumbar disc protrusion, and positive MRI of the cervical spine.  As to functional capabilities, Dr. Nijjar stated:

Regarding his cervical spine, considering this patient's subjective and objective factors of disability, in my opinion the patient is precluded from very heavy work, repetitive motion of the cervical spine in turning or twisting of the neck and prolonged stationary positioning.

Regarding his left shoulder, he is precluded from repetitive overhead work.

Regarding his lumbosacral spine, he is precluded from very heavy work, prolonged stationary positioning and climbing.

[4] It is interesting to note that, at this consultation, plaintiff reported that he smokes one and one-half packs of cigarettes per day.  It is unclear why plaintiff reported no tobacco use to Dr. Mann in January 2003.

Dr. Nijjar reported that plaintiff would need conservative treatment with physical therapy and anti-inflammatory medication if necessary for pain.

Plaintiff was examined by Dr. Broderick on October 7, 2004, and Dr. Broderick prepared a report on November 5, 2004.  As with Dr. Nijjar, Dr. Broderick conducted a comprehensive record review and performed an examination.  On physical examination, Dr. Broderick noted:

1.  No lower extremity muscle atrophy;

2.  Non-physiologic pain referral pattern consistent with symptom magnification;

3.  Intact deep tendon reflexes in lower extremities;

4.  No radiculopathy on bent leg or straight leg raising tests;

5.  No evidence of muscle spasm in the lumbar musculature;

6.  Negative sitting straight leg raising bilaterally;

7.  Patient able to toe walk and heel walk without difficulty;

8.  No pelvic obliquity;

9.  Negative Tinel's and Phalen's signs; and

10.  Full neck range of motion.

Overall, Dr. Broderick reported:

[Plaintiff's] clinical examination is unremarkable.  There is no evidence of radiculopathy in either the upper or lower extremities.  He demonstrated Waddell's signs of symptom magnification throughout the examination. His subjective complaints far outweigh his objective findings.

* * *

[Plaintiff] has evidence of spondylosis at L5 seen on x-ray.  He has minor disc bulging seen in the cervical and lumbar spine, although without evidence of nerve root involvement.

/ / /

/ / /

Regarding plaintiff's functional capabilities, Dr. Broderick opined:

> The [plaintiff] would benefit from restrictions from very heavy work in conjunction with his lower back symptomatology as well as x-ray and MRI findings. [¶] He would benefit from restrictions from repetitive overhead lifting in conjunction with his persistent left shoulder area symptomatology. [¶] He would require no work restrictions or preclusions with regard to his cervical area complaints.

2005[5]

Treatment notes dated February 16, 2005, March 29, 2005, May 4, 2005, and May 27, 2005, from Dr. Tanson are similar in that they all indicate "tenderness in the lumbosacral area." None appears to be accompanied by any objective findings.

Agency examining physician Dr. McIntire examined plaintiff on April 21, 2005. Regarding plaintiff's subjective complaints, Dr. McIntire reported:

> The claimant describes a work injury that occurred on September 24, 2003. He was apparently a pedestrian and hit by a forklift. He apparently subsequently fell onto his back. He indicates that as a result he has cervical and lumbar pain as well as left shoulder pain. Currently he describes diffuse lower lumbar pain. The pain tends to spread over the posterior aspect of the right thigh. It does not extend below the knee. It does not occur in a clear radicular pattern. He also describes his shoulder pain as occurring over the left scapular region. He notes some left lateral cervical pain. The claimant has not had surgery of the spine or shoulder.

After discussing the objective findings on physical examination, Dr. McIntire provided the following functional capacity assessment:

> Objectively, there are no findings of a cervical or lumbar radiculopathy or myelopathy. The claimant has mild loss of range of motion of the cervical region. Examination of the shoulder did not reveal impingement signs. Apprehension sign was also negative. There was mild loss of range of motion of the left shoulder. The claimant did not exhibit significant gait abnormalities.
>
> Given the above findings, the claimant would have functional limitations in terms of heavy lifting or carrying activities. He would be limited to lifting or carrying of not more than 25 pounds frequently or 50 pounds occasionally. He should not engage in extremely forceful pushing or pulling activities with the left upper extremity. The current exam does not

---

[5]     Records submitted after the administrative hearing.

11

otherwise suggest manipulative limitations.  There are not postural limitations suggested by the present exam.

### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

/ / /

/ / /

# IV.  DISCUSSION

In his motion for summary judgment, plaintiff argues:  (1) there is insufficient evidence to support the ALJ's finding that plaintiff's past relevant work was as a packaging machine operator or warehouse worker; (2) the ALJ's finding regarding plaintiff's ability to perform past relevant work fails to consider the physical demands of such work in light of plaintiff's residual functional capacity; (3) the ALJ failed to fully question plaintiff regarding his ability to perform past relevant work; (4) in determining plaintiff's residual functional capacity, the ALJ failed to consider plaintiff's limitations as to all of the strength demands of work; and (5) the ALJ's residual functional capacity finding is not based on plaintiff's treating physician's complete report, in which Dr. Watson imposed significant restrictions.  The court notes that, generally, plaintiff divides these arguments into two categories – arguments concerning the ALJ's residual functional capacity findings, and arguments concerning the ALJ past relevant work findings.  The court also notes that plaintiff does not challenge the ALJ's finding as to the severity of plaintiff's impairments, the ALJ's assessment of the medical opinions, or the ALJ's credibility finding.

## A.   Residual Functional Capacity

Residual functional capacity is what a person "can still do despite [the individual's] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.  Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work"

1   involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects

2   weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work"

3   involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects

4   weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work"

5   involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects

6   weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work"

7   involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying

8   of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

9           In this case, the ALJ concluded that, in light of the limitations imposed by

10  plaintiff's severe impairments of back, neck, and shoulder pain, plaintiff has the residual

11  functional capacity for medium work with a preclusion against forceful pushing and/or pulling

12  with the left upper extremity.  In reaching this conclusion, the ALJ stated:

13          I give controlling weight to the opinions of Dr. Watson, the claimant's
            treating physician, as well as that of Dr. McIntire, who performed the
14          recent orthopedic evaluation (Exhibits 11F, page 2; 13F), both of whom
            found the claimant capable of medium work, with a preclusion only
15          against forceful pushing or pulling.  While doctors Mann, Broderick, and
            Nijjar also indicate that the claimant is capable of medium work, I give
16          reduced weight to their opinions regarding the claimant's residual
            functional capacity as they include additional limitations which I find
17          unsupported by the objective medical evidence and which appear to be
            based on the claimant's subjective reports. . . .
18
                              *  *  *
19
            I thus find that at all relevant times, considering all of the evidence of
20          record, including the claimant's allegations of pain and other symptoms,
            that the claimant has been able to perform medium work with a preclusion
21          against extremely forceful pushing or pulling with the left upper extremity.

22  As stated above, plaintiff does not challenge the ALJ's findings regarding the severity of his

23  impairments, the weight given to the medical opinions, or plaintiff's credibility.  Instead, plaintiff

24  argues:  (1) in assessing plaintiff's residual functional capacity, the ALJ failed to consider

25  plaintiff's ability to perform all the strength demands of work; and (2) the ALJ failed to consider

26  Dr. Watson's complete report.

1           1.      <u>ALJ's Consideration of all Demands of Work</u>

2           Plaintiff argues that the "commissioner failed, as required by SSR 96-8p, in

3    making his 4th step residual functional capacity assessment, to consider separately Mr. Khan's

4    limitations and restrictions of physical strength to define his abilities to perform each of the seven

5    strength demands of a job."  According to plaintiff, the ALJ only considered plaintiff's ability to

6    lift and failed to consider plaintiff's ability to sit, stand, walk, carry, push, and pull.  Initially, the

7    court finds this argument somewhat puzzling.  As outlined above, the ALJ clearly found that

8    plaintiff was precluded from forceful pushing and pulling with the left upper extremity.

9    Therefore, plaintiff is simply incorrect when he asserts that the ALJ failed to consider these

10   abilities in assessing his residual functional capacity.  In addition, as to plaintiff's ability to lift

11   and carry, the ALJ stated that he agreed with Dr. McIntire who opined that plaintiff could lift

12   and/or carry up to 25 pounds frequently and 50 pounds occasionally.  Therefore, plaintiff is also

13   incorrect when he argues that the ALJ failed to consider plaintiff's ability to lift and carry.

14          As to the ALJ's consideration of plaintiff's ability to perform the remaining three

15   strength demands (sitting, standing, and walking), the ALJ rejected the "additional limitations"

16   imposed by Drs. Mann, Broderick, and Nijjar.   Dr. Mann opined that plaintiff should be able to

17   change positions as necessary.  Dr. Broderick indicated that plaintiff is precluded from repetitive

18   work.  Dr. Nijjar stated that plaintiff is precluded from prolonged stationary positioning and

19   repetitive work.  Taken together, these "additional limitations" relate to plaintiff's ability to sit,

20   stand, or walk for prolonged period of time.  The court concludes that, by rejecting these

21   limitations, the ALJ adequately considered plaintiff's ability to sit, stand, and walk.  By not

22   including any of the "additional limitations" in his residual functional capacity assessment, the

23   ALJ necessarily found that plaintiff was not limited in his ability to sit, stand, and walk for any

24   length of time in a normal work day.

25   / / /

26   / / /

1    In essence, plaintiff challenges the ALJ's residual functional capacity assessment

2 because the ALJ did not make an explicit separate finding as to each of the seven strength

3 demands of work.  Assuming this constitutes error, the court finds that the error is harmless.  The

4 Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts.

5 For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the

6 court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be

7 considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have

8 reached a different disability determination." Id. at 1056; see also Robbins v. Social Security

9 Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056).  Similarly, in

10 Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied

11 harmless error analysis to the ALJ's failure to properly credit the claimant's testimony.

12 Specifically, the court held:

13              However, in light of all the other reasons given by the ALJ for
              Batson's lack of credibility and his residual functional capacity, and in
14            light of the objective medical evidence on which the ALJ relied there was
              substantial evidence supporting the ALJ's decision.  Any error the ALJ
15            may have committed in assuming that Batson was sitting while watching
              television, to the extent that this bore on an assessment of ability to work,
16            was in our view harmless and does not negate the validity of the ALJ's
              ultimate conclusion that Batson's testimony was not credible.
17
              Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).
18

19 In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the

20 claimant's age and education.

21            In this case, plaintiff's argument puts form over substance.  Specifically, the court

22 finds that, even if the ALJ had made explicit findings as to each strength demand, no reasonable

23 ALJ, when viewing the uncontested medical evidence as a whole, would reach a different

24 conclusion as to plaintiff's residual functional capacity.

25 / / /

26 / / /

2.      Treating Physician's Report

Plaintiff contends that the ALJ did not base his decision on a complete version of Dr. Watson's February 5, 2004, report.  In particular, plaintiff asserts that the ALJ did not discuss Dr. Watson's conclusions that plaintiff was limited to only occasional lifting from floor level to waist height and only occasional bending.  According to plaintiff, this matter must be remanded to allow the ALJ to make a new residual functional capacity assessment in light of Dr. Watson's complete report.

As to Dr. Watson's February 5, 2004, assessment, the ALJ stated in the hearing decision:

> Dr. Watson, the claimant's treating physician, indicated on February 5, 2004, that the claimant was permanent and stationary, with a restriction against only very heavy work (Exhibit 11F, page 2).  He limited the claimant to only occasional repetitive lifting greater than 50 pounds from floor level, and pushing and pulling of comparable force.

Based on the foregoing, it is clear that the ALJ did in fact consider Dr. Watson's limitation as to the heights from which plaintiff could lift.  It is not clear, however, whether the ALJ had the benefit of Dr. Watson's opinion regarding bending.  But it is clear that the complete report was provided to the Appeals Council subsequent to the hearing.  Specifically, plaintiff's advocate submitted a letter to the Appeals Council on October 10, 2006, including the complete February 5, 2004, report.  As to this evidence, the Appeals Council stated in its December 14, 2006, order that it did not warrant re-opening the case.  Thus, while the ALJ may not have had before her Dr. Watson's complete report, the Appeals Council did and, as a result, the agency's final decision was based on all the evidence available.  A remand is not necessary.

**B.      Past Relevant Work**

For the reasons discussed above, the court concludes that the agency correctly assessed plaintiff's residual functional capacity.  Therefore, the question is whether plaintiff's residual functional capacity permits him to perform his past relevant work.  In challenging the ALJ's conclusion that it does, plaintiff argues:  (1) there was insufficient evidence that plaintiff's

1    past relevant work included work as either a packaging machine operator or warehouse worker;

2    (2) assuming the evidence was sufficient, the ALJ failed to consider the physical demands of the

3    past relevant work in light of plaintiff's functional capacity; and (3) the ALJ failed to develop the

4    record by fully questioning plaintiff regarding his ability to perform all the demands of his past

5    relevant work.  As to plaintiff's ability to perform past relevant work, the ALJ stated:

6               The claimant's past relevant work experience was as a packaging machine
                operator and a warehouse worker, work performed at a medium exertional
7               level.  I find that the claimant is able to perform his past relevant work.
                The claimant thus is "not disabled" within the meaning of the Social
8               Security Act, as amended.

9    There is no other discussion concerning past relevant work.

10                  1.      Sufficiency of the Evidence

11              Plaintiff contends that there was insufficient evidence in the record to support the

12   ALJ's description of plaintiff's past relevant work as either a "packaging machine operator" or

13   "warehouse worker."  The court does not agree.  A review of the disability adult report submitted

14   by plaintiff in March 2004 in connection with his application reflects that he described his past

15   work as "autostacker" and "laborer."  He said this work involved "labor work, lifting, carrying,

16   stacking boxes" and did not involve the use of machines, tools, or equipment.  However, in a

17   similar report submitted in April 2004, plaintiff stated that his past work was as a "Laborer

18   (machine optr.)."  He stated that this work involved the use of machines, tools, and/or equipment,

19   specifically indicating that he operated machines.  In a later document submitted to the agency,

20   plaintiff stated that his past work included "labor work stacking."  He indicated that he worked at

21   a distribution center and in a foundry.  Finally, the vocational expert testified at the hearing that

22   plaintiff had worked as a packaging machine operator and warehouse worker and neither plaintiff

23   nor his advocate objected to this testimony.

24   / / /

25   / / /

26   / / /

1                2.        Plaintiff's Ability to Perform Demands of Past Relevant Work

2                Plaintiff's next argument is that the ALJ failed to make specific findings as to

3    whether plaintiff could, in light of his residual functional capacity, perform the physical demands

4    of his past relevant work.[6]  In support of this argument, plaintiff cites Villa v. Heckler, 797 F.2d

5    794 (9th Cir. 1986), and Pinto v. Massanari, 249 F.3d 840 (9th Cir. 2001).  In response,

6    defendant argues only that "[i]t was not the Commissioner's burden to prove Plaintiff could

7    perform his past relevant work; it was Plaintiff's burden to prove he could not perform his past

8    relevant work."  (emphasis in original).

9                In Pinto, the Ninth Circuit noted:

10               Although the burden of proof lies with the claimant at step four,
         the ALJ still has the duty to make the requisite factual findings to support
11       his conclusion.  SSR 82-62.  See 20 C.F.R. §§ 404.1571 and 416.971,
         404.1574 and 416.974, 404.1565 and 416.965.  (footnote 3 omitted).  This
12       is done by looking at the "residual functional capacity and the physical and
         mental demands" of the claimant's past relevant work.  20 C.F.R. §§
13       404.1520(a) and 416.920(e).  The claimant must be able to perform:

14               1.        The actual functional demands and job duties of a particular
         past relevant job; or
15
                 2.        The functional demands and job duties of the occupation as
16       generally required by employers throughout the national economy.

17               This requires specific findings as to the claimant's residual
         functional capacity, the physical and mental demands of the past relevant
18       work, and the relation of the residual functional capacity to the past work.
         SSR 82-63.
19
         249 F.3d at 844-45.
20

21   The Ninth Circuit considered in Pinto the claimant's argument that the ALJ erred by not making

22   specific findings regarding past relevant work as both actually and generally performed.  See id.

23   at 845.  In rejecting this argument, the court held that the ALJ need only make findings as to

24

25        [6]        Plaintiff also seems to argue that the ALJ was required to consider his ability to
     perform the mental demands of his past relevant work.  However, there is nothing in the record to
26   suggest any mental or non-exertional limitations.

                                                    19

1    either actual or general performance of past relevant work, but not both.  See id.  In reaching this

2    holding, the court stated:

3              This is not to say, however, that the ALJ is in any way relieved of
      his burden to make the appropriate findings to insure that the claimant
4      really can perform his or her past relevant work.  This case vividly
      demonstrates the difficulty for the reviewing court where sufficient
5      findings are not made. . . .

6                               *  *  *

7              Because the ALJ made very few findings and relied largely on the
      conclusions of the vocational expert, it is difficult for this Court to review
8      his decision.  As the Tenth Circuit has noted, "[r]equiring the ALJ to make
      specific findings on the record at each phase of the step four analysis
9      provides for meaningful judicial review.  When . . . the ALJ makes
      findings only about the claimant's limitations, and the remainder of the
10     step four assessment takes place in the [vocational expert's] head, we are
      left with nothing to review."

11
      Pinto, 249 F.3d at 845-47 (citing Winfrey v. Chater, 92 F.3d 1017, 1025
12     (10th Cir. 1996)).

13   From this, it is clear that the ALJ is required to make specific factual findings as to the claimant's

14   ability to either actually perform past relevant work or generally perform past relevant work.

15   Further, it cannot be said that the failure to make such specific findings is harmless because there

16   is no way to glean from the record what those findings would have (or should have) been.

17   Therefore, it is impossible to determine whether a reasonable ALJ would have reached the same

18   disability determination had specific findings been made.  As the Ninth and Tenth Circuits have

19   observed, specific findings are required for meaningful judicial review.

20              In this case, it is clear that the ALJ did not make the required specific factual

21   findings.  As in Pinto, a review of the hearing transcript reflects an absence of facts supporting

22   the conclusion that plaintiff could perform his past relevant work.  Specifically, there is no

23   indication from the transcript that the vocational expert or ALJ explicitly considered whether

24   plaintiff's residual functional capacity allows him to perform each of the demands of his past

25   relevant work as either a packaging machine operator or warehouse worker.  In fact, there is no

26   discussion at all concerning the actual or general demands of such work.

1	Defendant's arguments are not persuasive.  Defendant argues that there is no error

2	because the vocational expert's testimony constituted substantial evidence supporting the ALJ's

3	ultimate conclusion regarding past relevant work, and because the record contains a description

4	from the Dictionary of Occupational Titles ("DOT") of plaintiff's past relevant work, which also

5	constitutes substantial evidence.  While defendant is certainly correct that the ALJ may consider

6	a vocational expert's testimony and a DOT description, see Tylitzki v. Shalala, 999 F.2d 1411,

7	1415 (9th Cir. 1993), see also Pinto, 249 F.3d at 845, this in no way relieves the ALJ of the duty

8	to make specific findings based on such evidence.  What the ALJ may properly consider in

9	making findings and whether the ALJ must make findings are two different questions.

10	Defendant's arguments go to the first, but not the latter, and defendant cites no authority and

11	presents no argument that the ALJ need not make specific factual findings as to a plaintiff's

12	ability to perform either the actual or general demands of past relevant work.

13	The court agrees with plaintiff that this case must be remanded to allow the

14	agency to make the specific factual findings required by the regulations.  If the ALJ concludes on

15	remand that plaintiff is not capable of performing past relevant work, the ALJ should proceed to

16	step five of the sequential analysis and consider whether plaintiff's residual functional capacity

17	permits him to perform other types of work which exist in the national economy.  See 20 C.F.R.

18	§§ 404.1520(f) and 416.920(f).

19	While it seems clear that, if plaintiff cannot perform his past relevant work, his

20	residual functional capacity would allow him to perform other types of sedentary, light, or

21	medium work, the record contains no evidence in this regard.  Specifically, the ALJ did not

22	provide any analysis under the Medical-Vocational Guidelines, nor is there any vocational expert

23	testimony regarding other types of work.  Therefore, the court cannot conclude that the ALJ's

24	ultimate determination that plaintiff is not disabled is correct notwithstanding the error at step

25	four concerning past relevant work.   It is not for this court to make such a determination in the

26	first instance, especially where there is no evidence to support a particular conclusion at step five.

1    Moreover, even if the court were to consider whether the ALJ's ultimate disability determination

2    was correct based on a step five analysis, it could not be said that the determination was based on

3    the ALJ's proper legal analysis of substantial evidence in the record.[7]

4             3.     ALJ's Questioning of Plaintiff

5           Finally, plaintiff argues that the ALJ failed to "fully question Mr. Khan to develop

6    the record regarding the physical and mental demands of his past relevant work."  The ALJ has

7    an independent duty to fully and fairly develop the record and assure that the claimant's interests

8    are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  When the

9    claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in

10   seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously and conscientiously

11   probe into, inquire of, and explore for all the relevant facts."  Cox v. Califano, 587 F.2d 988, 991

12   (9th Cir. 1978).  Ambiguous evidence, or the ALJ's own finding that the record is inadequate

13   triggers this duty.  See id.  The ALJ may discharge the duty to develop the record by subpoenaing

14   the claimant's physicians, submitting questions to the claimant's physicians, continuing the

15   hearing, or keeping the record open after the hearing to allow for supplementation of the record.

16   See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

17          In this case, the record was neither ambiguous nor inadequate with respect to

18   plaintiff's residual functional capacity.  However, given that the ALJ did not make any specific

19   findings as to the demands of plaintiff's past relevant work as actually or generally performed, it

20   is not possible to determine whether the record was ambiguous or inadequate in this regard.

21   Therefore, on remand, the ALJ should question plaintiff, if necessary to develop the record, to

22   determine whether he has the capacity for past relevant work, either as actually or generally

23   performed.  Similarly, if the ALJ determines that plaintiff is unable to perform past relevant

24

25        [7]     Had the ALJ asked the vocational expert about plaintiff's ability to perform other
types of work, and had the ALJ conducted step five analysis as an alternative basis for his
26   disability determination, it is likely this court would be able to affirm the denial of benefits.

work, it may be necessary to question plaintiff to determine whether he can perform other types of work consistent with his residual functional capacity.

## V. CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.  In particular, the court concludes that, while the ALJ concluded that plaintiff could perform his past relevant work as a packaging machine operator and/or warehouse worker, the ALJ did not make specific findings as to plaintiff's capabilities with respect to the demands of past relevant work as either actually or generally performed.  On remand, it will be necessary for the ALJ to make such findings or, if the ALJ concludes that plaintiff cannot perform past relevant work, for the ALJ to make findings at step five of the sequential analysis regarding plaintiff's ability to perform other types of work.

Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment (Doc. 18) is granted;

2.      Defendant's cross-motion for summary judgment (Doc. 21) is denied;

3.      This matter is remanded for further proceedings consistent with this order; and

4.      The Clerk of the Court is directed to enter judgment and close this file.

DATED:  July 3, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE